OPINION
Craig Fike was indicted for driving under the influence of alcohol, a felony, in that Fike had been previously convicted of driving under the influence three times within a six-year period preceding November 25, 2000, the date of the offense under review.
The indictment was tried to the bench. The trial court found Fike guilty and sentenced him to five years of community control sanctions, including a sixty-day period of incarceration. Incarceration was stayed pending appeal.
On appeal, Fike contends in a single assignment of error that his conviction for driving under the influence of alcohol was not supported by evidence beyond a reasonable doubt.
* * * * *
The State's testimony was presented through Carl Plummer, a sergeant with the Butler Township Police Department and Shana Hamby, a police officer with the Dayton Police Department. Fike did not present any defense witnesses or exhibits.
Prior to trial, counsel for the parties stipulated that the testimony of Dan Hayes and Chad Caudill would have been that on the night in question they were in the company of Jason Hurst and Craig Fike at a tavern called The Greenleaf. The four left in two separate cars with Hayes and Caudill in one car and Hurst and Fike in a second car, which was a 1999 silver Dodge. The four traveled to a UDF store on N. Dixie Drive, and all four entered the store. Hayes and Caudill left the store before Hurst and Fike, and neither Hayes nor Caudill could testify as to who was driving the 1999 silver Dodge when that vehicle eventually left the UDF store. The stipulation added that the accident occurred minutes after the 1999 silver Dodge left the store.
The parties also stipulated to Fike's three prior DUI convictions.
Sgt. Plummer testified that on the evening of November 25, 2000, at about 9:00 p.m., he was northbound on Brantford Road just south of the T intersection of Brantford Road and Bartley Road. (Bartley Road enters the intersection with Brantford Road from the east). Sgt. Plummer testified that he observed Fike driving westbound on Bartley Road operating a silver vehicle. Sgt. Plummer testified that Fike failed to stop at the stop sign, and that he only stopped after traversing three quarters of northbound Brantford Road. From a vantage point of thirty feet, Sgt. Plummer said that he could observe the driver's face and that there was one person in the vehicle whom he identified as Fike. Sgt. Plummer testified that Fike turned left to go south on Brantford Road and that he, Sgt. Plummer, made a U-turn and followed Fike. Sgt. Plummer testified that Fike appeared to be sick or intoxicated, had a "very stupored look about himself," and "was dazed there for a moment." Sgt. Plummer testified that he followed Fike because he had almost run a stop sign and had looked sick or intoxicated. Sgt. Plummer testified that after executing his U-turn, he was approximately ten seconds behind Fike and that Fike failed to negotiate a ninety-degree curve on Brantford Road, crossed over Brantford Road, and ran into a tree on the other side of the road. Sgt. Plummer observed Fike walking away from the driver's side of the vehicle. Sgt. Plummer said Fike had progressed about twenty feet from the vehicle when Sgt. Plummer called him back. Upon returning to where Sgt. Plummer stood, Sgt. Plummer smelled a strong odor of an alcoholic beverage. He also observed a cut across the bridge of Fike's nose and wet trousers, from either urine or spilled liquid, but no staggering. Fike said he thought he was on Little York Road, which is three miles north of the accident scene. Sgt. Plummer observed a spilled bottle of beer in the car on the driver's side and a twelve or twenty-four pack of beer on the passenger floorboard. Sgt. Plummer opined that Fike was under the influence of alcohol based on his actions, odor, and his trying to leave. Sgt. Plummer indicated that he was acquainted with Jason Hurst and that Hurst was not driving the car, and that he saw no one else running from the car after the collision.
Shana Hamby testified that after she was called to the scene, she spoke with Fike who was in Sgt. Plummer's cruiser. She said he emitted a "very strong" odor of an alcohol beverage, which she opined was beer. No field sobriety tests were conducted because of the injury Fike had sustained. Hamby had paramedics take Fike to Good Samaritan Hospital where she read him his Miranda rights. Hamby considered this an investigation for driving under the influence because there had been an accident, there had been beer in the car, because of Sgt. Plummer's observations of Fike which he had conveyed to her, and because Fike had a strong odor of an alcoholic odor on his breath. Officer Hamby provided Fike with an opportunity to take a breath test, which he said he would not take because he wouldn't pass it, but also because he wasn't driving. Fike told Hamby he had consumed a six pack of beer since 6:30 with Dan Hayes and Chad Caudill. In response to a question: "Are you under the influence of alcohol?" Fike answered: "Yes I've been drinking." When asked why she arrested Fike for driving under the influence, Officer Hamby stated: "Based on Sgt. Plummer as the witness, what he had seen, the strong odor of alcohol that was on him, the answers to the questions, what he had been drinking, how much, and the time frame he had been drinking." Officer Hamby indicated that Fike had been polite and cooperative, and had told her that Dan Hayes had been driving the car.
* * * * *
Fike contends that the State failed to establish he was driving under the influence of alcohol by the appropriate degree of proof because there was no testimony that he staggered when he walked, no testimony that his speech was slurred or that his eyes were bloodshot or glassy, no testimony that his face was flushed, and because the evidence established that he was obedient and cooperative with the police. Fike also argues that his admission to drinking should not be taken as an admission of being under the influence of alcohol.
If, as the prosecutor suggests, Fike is contending that the evidence did not establish that he was driving the automobile at the time of the accident, suffice it to say that Dan Hayes could not have been the driver according to the stipulation of the parties mentioned above. Furthermore, the testimony of Sgt. Plummer dispelled any argument that Jason Hurst was the driver or that the automobile was occupied by anyone else but Fike at the time of the accident.
Turning to the question of whether the State established that Fike was under the influence of alcohol, the testimony of Sgt. Plummer was that at the time he observed Fike at the intersection of Brantford and Bartley Roads, Fike appeared to be sick or intoxicated and "very stupored" and "dazed." Secondly, after proceeding into the intersection without stopping, Fike turned left and almost immediately thereafter failed to negotiate a ninety-degree curve resulting in his running into a tree on the other side of the road. Both Sgt. Plummer and Officer Hamby testified to an odor of alcohol emitting from Fike which Officer Hamby emphasized was "very strong." There was an open beer container in the car, as well as a twelve or twenty-four pack of beer. While we may agree with Fike that his response: "Yes, I've been drinking" to a question: "Are you under the influence of alcohol?" may not be an admission of being under the influence of alcohol, there can be no doubt, based on Fike's own words, that he had been drinking steadily for a period of more than two hours prior to the accident.
In our judgment, this case is stronger on the facts than the case relied upon by Fike, State v. Murphy (1986), 30 Ohio App.3d 255. We conclude that the State met its burden of proof to establish beyond a reasonable doubt that Fike was operating his vehicle under the influence of alcohol.
The judgment appealed from will be affirmed.
FAIN, J. and GRADY, J., concur.