Appellant, Michael R. Kokal, appeals from his conviction and sentence in the Miamisburg Municipal Court on a charge of driving while intoxicated, in violation of R.C. 4511.19(A)(1). The municipal court sentenced Kokal to a 180-day jail term and a $500 fine for this violation. The court also found Kokal guilty of speeding and imposed a $20 fine for that charge. Kokal has not appealed from his conviction for speeding.
 I.
On November 9, 1996, at approximately 1:30 a.m., Trooper Steve Duteil of the Ohio State Highway Patrol was patrolling State Route 741 in Miami Township. Duteil spotted a car, driven by appellant Kokal, that appeared to be speeding. Using his radar, the trooper determined that Kokal was driving 55 miles per hour on a stretch of road with a limit of 45 miles per hour. As the car passed by the trooper's vehicle, it quickly changed lanes and then made a fast left turn onto Kingsridge Drive. Trooper Duteil then turned his patrol vehicle around and activated his lights and siren. The trooper intercepted Kokal in the parking lot of a night-club.
At trial, Trooper Duteil testified that Kokal was leaving his car as he approached. The trooper stated that he observed that Kokal was off balance as he was leaving his car. Duteil also testified that, while speaking with Kokal, he observed that the latter's eyes were bloodshot, that his speech was slurred, and that he smelled of alcohol.
After stopping Kokal, Trooper Duteil made him perform a series of three sobriety tests. First, he asked him to perform a horizontal gaze nystagmus (HGN) test. The trooper testified, at trial, that Kokal showed all six possible signs of intoxication under that test. After administering the HGN test, the trooper asked Kokal to perform a one-legged stand test. According to the trooper, Kokal failed that test after three attempts. Kokal then attempted to walk in a straight line, heel to toe. The trooper's testimony established that he failed this third test of sobriety as well. Trooper Duteil then arrested Kokal and read him his Miranda rights.
After handcuffing Kokal and placing him in the back of the patrol car, Trooper Duteil asked him how much alcohol he had consumed that evening. The trooper testified that Kokal's response was "approximately four beers." Mr. Kokal testified, however, that he told the trooper between three and four beers. After responding to the trooper's question, Kokal admitted that he had been speeding. When they arrived at the police station, appellant refused to take the intoxilyzer breath test.
When Kokal and Trooper Duteil arrived at the police station, they were met by Officer Robert Sakal of the Miami Township Police Department. Sakal was able to observe Kokal while the latter left the patrol car and during processing. Sakal testified that Kokal was "off balance" when he walked, that he slurred his speech, and that he smelled of alcohol. Sakal testified that, in his opinion, Mr. Kokal was intoxicated.
In his defense, appellant Kokal testified that, although he had drunk between three and four beers on the night of arrest, he had done so over the course of four hours. He also testified that he was wearing cowboy boots that night, a fact confirmed by Trooper Duteil. Kokal claimed that the boots affected his ability to perform the sobriety tests. He testified that he asked the trooper repeatedly if he could take off his boots first. The trooper testified, however, that he didn't remember if Kokal had made such a request, but he would have remembered if he had done so repeatedly. Kokal also testified that he was recovering from a broken foot. That injury, he said, caused numbness in his heel and affected his performance on the tests.
 II.
In his sole assignment of error, Kokal asserts that:
 THE D.U.I. CONVICTION MUST BE REVERSED BECAUSE THE GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 A valid conviction for driving while intoxicated by alcohol requires that the State prove that the defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol. State v. Lowman (1992), 82 Ohio App.3d 831, 836. Kokal contends that his own testimony raised significant doubts as to whether he was intoxicated while he was driving. Thus, he asks this court to review the evidence to determine if the state met its burden of persuasion beyond a reasonable doubt. In State v. Thompkins, 78 Ohio St.3d 380, 387, the Supreme Court of Ohio adopted the following standard for appellate courts to apply when considering the weight of evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 Id. (quoting State v. Martin (1983), 20 Ohio App.3d 172,175).
The evidence presented against Kokal at trial was extensive. Two police officers observed that Kokal had bloodshot eyes, walked out of balance, and slurred his speech. Both testified that he smelled of alcohol. Additionally, Trooper Duteil testified that Kokal failed three tests of sobriety, including showing all six signs of intoxication under the HGN test. Kokal also admitted to drinking at least three beers. Finally, Kokal's refusal to take the intoxilyzer test was probative — although not conclusive — evidence of his being intoxicated. See Westerville v.Cunningham (1968), 15 Ohio St.2d 121, paragraph one of the syllabus; Maumee v. Anistik (1994), 69 Ohio St.3d 339, 343.
Kokal argues that his testimony that he consumed slightly more than three beers over the course of four hours offsets the incriminatory aspect of his confession, as well as showing affirmatively that he was not intoxicated. He also argues that his testimony about the hindrance of his cowboy boots and injured foot explain his failure to pass some of the sobriety tests. Kokal further contends that the smell of alcohol showed only that he had been drinking — something which he admitted — not that he was intoxicated. As Kokal notes in his appellate brief, "the law prohibits drunken driving, not driving after a drink." State v.Taylor (1981), 3 Ohio App.3d 197, 198.
The various explanations and mitigating occurrences offered by Kokal do not explain away all the evidence against him, however. Kokal does not address why he failed the HGN test given to him by Trooper Duteil. Nor does he explain why his speech was slurred or why his behavior led two officer to believe he was intoxicated.
A few indications of intoxication may be inadequate, when considering all of the circumstances of a particular case, to support a conviction for D.U.I. under a manifest-weight-of-the-evidence inquiry. See, e.g., State v. Murphy
(1986), 30 Ohio App.3d 255, 256 (reversing conviction where defendant showed, as an alternative explanation of her condition and behavior, that she was startled by the traffic accident in which she was involved); cf. Taylor, 3 Ohio App.3d at 198 (finding lack of probable cause for arrest); State v. Finch (1985),24 Ohio App.3d 38, 39-40 (finding lack of probable cause for arrest). However, when the indicia of intoxication are arrayed in such quantity as they are against appellant, the weight of evidence supporting conviction cannot be denied. See State v. Franke
(September 25, 1996), Medina App. No. 2490-M, at 3 ("A refused blood alcohol test, failed field sobriety tests, and the opinion testimony of the arresting officer are clearly sufficient to support a conviction for driving while intoxicated. Our review of the record and consideration of inferences to be drawn from the evidence therein disclose no reason to conclude that the trial court lost its way in resolving conflicts in the evidence."). Kokal's assorted coincidental explanations of his behavior are not so compelling that we would be inclined to go against the original factfinder's determination of his credibility. See State v.Amburgey (1987), 33 Ohio St.3d 115, 117 ("[T]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.")
Accordingly, we do not conclude that the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Thompkins,78 Ohio St.3d at 387. Therefore, we find that appellant's conviction was not against the manifest weight of the evidence. Appellants sole assignment of error is overruled.
The judgment of the trial court is Affirmed.
YOUNG, P.J., and GRADY, J., concur.
Copies mailed to:
Ronald L. Fobes
John H. Rion
Hon. Robert Messham